**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**CASEY ERNEST, et al.,**

**Plaintiffs,**

**v.**

**Case No. 6:25-cv-01115-JMK**

**LEISZLER OIL CO., INC,**

**Defendant.**

**MEMORANDUM AND ORDER**

This is a common law nuisance and trespass claim brought by Plaintiffs Casey, Steven, and Donna Ernest (altogether "Ernests") against Defendant Leiszler Oil Co., Inc. ("Leiszler Oil") over a gas leak from its facility. The Ernests also seek relief under a federal statute: the Resource Conservation and Recovery Act ("RCRA"). Leiszler Oil moves for summary judgment on the RCRA claim. Because the Ernests' RCRA claim presents redressability issues and fails to meet the standard required by the statute, the Court grants Leiszler Oil's motion. The Court also declines to exercise supplemental jurisdiction over the Ernests' remaining claims.

## I. BACKGROUND[1]

The Ernests co-own a home in Garnett, Kansas. Doc. 50 at 2. Casey is the sole occupant of the home. *Id.* Leiszler Oil owns a gas station adjacent the home. *Id.* On January 17, 2024, Casey called the City of Garnett Fire Department, reporting gasoline odors in the basement. Doc. 55 at ¶ 1. Casey testified that the fire department advised her to vacate the home because of a possible

[1] The facts are those uncontroverted by the parties unless otherwise indicated.

gas leak, but Casey has since returned home. *Id.* at ¶¶ 6–7; Doc. 62 at ¶ 10.[2] The Kansas Department of Health and Environment ("KDHE") determined that the odors came from a gas leak from Leiszler Oil's adjacent property. Doc. 55 at ¶ 2.

Remediation measures and air quality testing have since been conducted, but the parties dispute the purpose of the remediation and the meaning of the air quality results. Doc. 55 at ¶¶ 11–17; Doc. 62 at ¶¶ 11–17. Other than the fire department's initial instruction that Casey vacate the property, no governmental agency has condemned the residence, prohibited occupancy, issued an order to vacate, or declared it uninhabitable. Doc. 55 at ¶ 10; Doc. 62 at ¶ 10.

The Ernests filed their Complaint on May 30, 2025. Doc. 55 at ¶ 18. Attached to the Complaint was the Ernests' Notice of Intent to File Suit under the RCRA. Doc. 1-1. That notice provided that if suit was filed, the Ernests would seek "all appropriate relief including mandatory and injunctive relief, civil penalties, damages and all costs of litigation, including but not limited to attorneys' fees, and expert witness fees." *Id.* But when suit was filed, the Complaint's prayer for relief requested "a judgment and actual damages in the amount in excess of $75,000, plus attorneys fees and costs, and any other relief that the court may deem just and equitable." Doc. 1 at 4.

The Court entered the Pretrial Order—which supersedes the Complaint—on June 29, 2026. Doc. 55 at ¶ 19; *Swearingen v. Pleasanton Unif. Sch. Dist. 344*, 641 F. Supp. 3d 1141, 1164 (D. Kan. 2022). The Ernests' factual contentions in the Pretrial Order assert that Leiszler Oil caused "permanent damage to the value of Plaintiffs' property, as well as significant annoyance,

[2] The Ernests' factual contentions in the Pretrial Order state that Casey returned to the home on March 12, 2024. Doc. 50 at 3.

inconvenience, and loss of peace of mind to Plaintiffs." Doc. 50 at 4. Under the heading "Damages and Non-Monetary Relief Requested," the Ernests seek the following relief:

i. Property Damage/Diminished Property Value: $100,000;

ii. Inconvenience, Annoyance, and Loss of Peace of Mind: $200,000;

iii. On the RCRA claim, legal fees and expenses as allowed by 42 U.S.C. § 6972;

iv. On the RCRA claim, expert consulting fees as allowed by 42 U.S.C. § 6972.

*Id.* at 8. The words "injunction" and "enjoin" do not appear in the Pretrial Order. Leiszler Oil now moves for summary judgment on the Ernests' RCRA claim. Doc. 55.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). Disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* To determine whether a genuine dispute exists, the court views the evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *Id.* Once the moving party meets its burden, the burden shifts to the nonmoving party to "set forth specific facts" from which a reasonable jury could find for the nonmovant. *Id.* at 671.

## III. ANALYSIS

### A. The Ernests' backwards-looking claims are not redressable under the RCRA.

Leiszler Oil's motion for summary judgment is centered on the Ernests' RCRA claim. Leiszler Oil argues that the RCRA's citizen suit provision only permits injunctive relief, but the Ernests' claims only seek monetary relief. *See* Doc. 55 at 5–8. And so, Leiszler Oil argues that

there is no statutory basis for relief under the RCRA. In response, the Ernests agree that citizen suits under the RCRA can only obtain injunctive relief. *See generally Meghrig v. KFC Western, Inc.*, 516 U.S. 479 (1996). But precisely because injunctive relief is the sole available remedy, the Ernests assert that they have implicitly pleaded for injunctive relief. *See generally* Doc. 62 at 13–16. According to the Ernests, by bringing an RCRA claim, the fact they are seeking an injunction is "obvious." And their failure to state the obvious is not grounds for dismissal.

Although not framed in terms of standing, Leiszler Oil's argument, at its core, comes down to redressability.

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000). The Ernests' claims are not redressable by the RCRA and, therefore, they lack standing.

Even accepting the Ernests' argument that they are "obviously" seeking an injunction, it is far from obvious what injunction they seek. The RCRA's citizen suit provision provides for two different remedies against a defendant: "to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste" or "to order such person to take such other action as may be necessary . . . ." 42 U.S.C. § 6972(a); *see also Meghrig*, 516 U.S. at 484. The Pretrial Order is completely silent on what, if any, injunctive relief is sought. The closest answer can be found in the Ernests' response to Leiszler Oil's Motion for Summary Judgment, in which they assert their

obvious, implicit injunction would serve to "clean up this mess." Doc. 62 at 16.[3] But the Ernests' damages asserted in their Pretrial Order are dispositive. They seek monetary damages for damage to property, monetary damages for inconvenience, annoyance, and loss of peace of mind, legal fees and costs, and expert fees. Doc. 50 at 7–8. That is all they ask for; they do not claim that their damages are ongoing.

"In analyzing the redressability prong of Article III standing, courts have found that where a plaintiff alleged a wholly past harm or asserted a claim for damages already incurred absent an alleged ongoing RCRA violation, the plaintiff's alleged harm was not redressable under RCRA." *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 478 F. Supp. 3d 417, 431–32 (E.D.N.Y. 2020); *see also Wademan v. Concra*, 13 F. Supp. 2d 295, 304–05 (N.D.N.Y. 1998).

This reasoning applies squarely to the Ernests' claims. They lack standing to assert a claim under the RCRA.

**B. The Ernests have not shown an imminent and substantial endangerment to health or the environment.**

Leiszler Oil argues that even if the Ernests were properly seeking injunctive relief, they have failed to meet the burden required for injunctive relief under the RCRA. *See* Doc. 55 at 9–12. The RCRA permits injunctive relief against contributors of waste that "may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). The Ernests did not respond to this argument.

> [T]he term "imminent" is not defined by RCRA, however, the Supreme Court has held that an endangerment can only be imminent if it threatens to occur

[3] Even if this remedy were included in the Pretrial Order, it would be an inadequate request for an injunction. *See Towet v. United States Dep't of Homeland Sec.*, 2021 WL 3722740, at *4 (D. Kan. Aug. 23, 2021) ("To determine whether an injury is redressable, a plaintiff must establish a relationship between the judicial relief requested and the injury suffered."); *see also* Fed. R. Civ. P. 65(d)(1)(B) ("Every order granting an injunction and every restraining order must . . . state its terms specifically"); *Askins v. Proffit*, 2026 WL 1465453, at *4 (D. Kan. May 26, 2026) ("[A]ny request for injunctive relief must specify the relief requested.").

> immediately. Nonetheless, a finding of "imminency" does not require a showing that actual harm will occur immediately as long as the risk of threatened harm is present. In other words, an "imminent hazard" may be declared at any point in a chain of events which may ultimately result in harm to the public. Imminence, thus, refers to the nature of the threat rather than identification of the time when the endangerment initially arose.
>
> Finally, the word "substantial" is not defined in RCRA or its legislative history. Nonetheless, relevant case law has held that an endangerment is "substantial" under RCRA when it is "serious." This does not necessitate quantification of endangerment, as an endangerment is substantial where there is reasonable cause for concern that someone or something may be exposed to risk of harm by release, or threatened release, of hazardous substances in the event remedial action is not taken.

*Burlington Northern & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1020–21 (10th Cir. 2007) (citation cleaned up).

The Court agrees with Leiszler Oil: the uncontroverted facts show that the gas leak no longer presents an imminent and substantial endangerment to health or the environment.

No governmental agency has condemned the residence, prohibited occupancy, or declared it uninhabitable since the fire department's initial instruction that Casey leave the house on January 17. Doc. 55 at ¶ 10; Doc. 62 at ¶ 10. Although the parties dispute the meaning of the air quality testing results, Casey reoccupied the home on March 12, 2024, and has stayed ever since. Doc. 50 at 3. The Ernests did not file their Complaint until May 30, 2025. Doc. 55 at ¶ 18. Even viewed in the light most favorable to the Ernests, these facts do not suggest the presence of a substantial and imminent endangerment to health that persisted during the 14 months that Casey lived in the home before filing suit.

The Ernests' own expert and licensed professional geologist, Chris Carey, only recommends "retesting and further evaluation . . . to determine the appropriate next steps." Doc. 62-6 at 12. But "[t]he mere presence of contaminants, even at high concentrations, is alone not enough to constitute an imminent and substantial endangerment." *Lovejoy v. Amcox Oil & Gas,*

*LLC*, 2022 WL 17566235, at *12 (S.D.W. Va. Dec. 9, 2022) (citation and internal quotation marks omitted). And "the very nature of relief sought" undermines this assertion as well. *Id.* The fact that no specific remediation has been proposed—outside of "further evaluation"—undermines any assertion of a substantial or imminent danger. Furthermore, Mr. Carey concludes:

> The damages and impacts to the Ernest Residence . . . stem from the presence of known carcinogens in indoor air and the perceived risk associated with those contaminants. This perceived risk has the potential to cause significant stress for residents, diminish property values, and impair the ability to sell the property in the future.

Doc. 62-6 at 14–15. Stress and property value diminution are not impacts to health or the environment, let alone "imminent and substantial endangerment[s] to health or the environment." Thus, even accepting Mr. Carey's statements and conclusion, the record fails to establish the existence of an imminent and substantial endangerment to health or the environment.[4] And so, the Ernests cannot obtain any injunctive relief under the RCRA's citizen suit provision as a matter of law. The Court therefore grants summary judgment on the RCRA claim in Leiszler Oil's favor.

### C. The Court declines to exercise supplemental jurisdiction over the Ernests' common law and state law claims.

Having dismissed the Ernests' RCRA claim, all that remains are their common law and state law claims. Under 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over state law claims that are part of the same case or controversy as claims over which it has original jurisdiction. But "a district court may decline to exercise supplemental jurisdiction over a state law claim if, among other reasons, it has 'dismissed all claims over which it has original jurisdiction.'" *Tufaro v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 107 F.4th 1121, 1141

---

[4] Because dismissal of the RCRA claim is dispositive, the Court need not resolve the parties' pending motions regarding expert testimony. Docs. 52, 53, and 61.

(10th Cir. 2024) (quoting 28 U.S.C. § 1367(c)(3)). The decision to exercise supplemental jurisdiction is discretionary. *N.M. Trappers Ass'n v. Torrez*, 178 F.4th 561, 571 (10th Cir. 2026).

The Court has dismissed the only claim over which it has original jurisdiction and the parties have stipulated that "if the [C]ourt dismisses the RCRA claim, the [C]ourt no longer has jurisdiction over the remaining state claims." Doc. 50 at 1. The Court therefore declines to exercise supplemental jurisdiction over the state claims. The Ernests' remaining common law and state law claims are dismissed without prejudice.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that Leiszler Oil's Motion for Partial Summary Judgment (Doc. 54) is GRANTED. The Court enters judgment for Leiszler Oil on Count I of the Pretrial Order (Doc. 50). The Court declines to exercise supplemental jurisdiction over the Ernests' remaining common law and state law claims and DISMISSES Counts II, III, and IV WITHOUT PREJUDICE.

THE COURT FURTHER DENIES Defendant's Motions to Exclude Expert Testimony (Docs. 52 and 53) and Plaintiff's Motion for a Daubert Hearing (Doc. 61) as moot.

This case is closed.

IT IS SO ORDERED.

Dated: November 6, 2026

s/ Jeffrey M. Kuhlman
JEFFREY M. KUHLMAN
UNITED STATES DISTRICT JUDGE